1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL KOGAN and CHRISTOPHER
HEWITT,

                    Plaintiffs,

        v.

ALLSTATE FIRE AND CASUALTY
INSURANCE CO.,

                    Defendant.

CASE NO. C15-5559 BHS

ORDER DENYING PLAINTIFFS'
MOTION TO STRIKE, DENYING
DEFENDANT'S MOTION TO
DISMISS, AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

        This matter comes before the Court on Defendant Allstate Fire and Casualty

Insurance Co.'s ("Allstate") motion to dismiss (Dkt. 27).[1]  The Court has considered the

pleadings filed in support of and in opposition to the motion and the remainder of the file

and hereby rules as follows:

### I. PROCEDURAL HISTORY

        On August 4, 2015, Plaintiffs Daniel Kogan ("Kogan") and Christopher Hewitt

("Hewitt") (collectively "Plaintiffs") filed an amended class action complaint against

---

        [1] For the reasons explained below, the Court converts Allstate's motion to dismiss into
one for summary judgment with respect to certain issues.

Allstate in Pierce County Superior Court.  Dkt. 1-2 ("Comp.").  Plaintiffs assert a single

breach of contract claim.  *Id.* ¶¶ 6.1–6.5.

On August 7, 2015, Allstate removed the action to this Court under the Class

Action Fairness Act, 28 U.S.C. § 1332(d).  Dkt. 1.  On November 9, 2015, the Court

denied Plaintiffs' motion to remand.  Dkt. 22.

On December 8, 2015, Allstate moved to dismiss.  Dkt. 27.  On January 11, 2016,

Plaintiffs responded.  Dkt. 32.  On January 15, 2016, Allstate replied.  On January 20,

2016, Plaintiffs filed a surreply, seeking to strike allegedly new arguments in Allstate's

reply.  Dkt. 35.

## II. FACTUAL BACKGROUND

Hewitt was involved in a car accident on January 6, 2015.  Comp. ¶ 1.9.  Although

the at-fault driver had insurance, the policy limit was $25,000.  *Id.*  Hewitt's car sustained

heavy damage, and the repairs cost more than $35,000.  *Id.*  Hewitt's car was worth less

after it was repaired than before the accident.  *Id.*  On January 23, 2015, Kogan's car was

damaged in a hit-and-run.  *Id.* ¶ 1.8.  Kogan's car was also worth less after it was repaired

than before the accident.  *Id.*

Both Plaintiffs had automobile insurance policies with Allstate.  *Id.* ¶ 1.2.  The

policies provide underinsured motorists ("UIM") coverage for both bodily injury and

property damage:

> **Underinsured Motorists Insurance Coverage SS**
> We will pay damages which an insured person is legally entitled to
> recover from the owner or operator of an underinsured motor vehicle
> because of bodily injury sustained by an insured person. . . . We will pay
> those damages which an insured person is legally entitled to recover from

the owner or operator of an underinsured motor vehicle because of property
damage sustained to an insured motor vehicle.

Dkt. 29, Declaration of Patricia Cummings ("Cummings Dec."), Ex. C at 38; *see also*

Comp. ¶¶ 1.2–1.3.  The UIM coverage section further provides that "[t]he right to receive

any damages and the amount of damages will be decided by agreement between the

insured person and us."  Cummings Dec., Ex. C at 38.

The UIM coverage section includes other provisions relevant to the instant

motion:

> **Proof of Claim; Medical Reports**
> As soon as possible, any person making claim must give us written
> proof of claim.  It must include all details we may need to determine the
> amounts payable.
> \*       \*       \*
> **Assistance and Cooperation**
> We may require the insured person to take proper action to preserve
> all rights to recover damages from anyone responsible for the bodily injury
> or property damage.
> \*       \*       \*
> **Action Against Us**
> No one may sue us under this coverage unless there is full
> compliance with all the policy terms.

*Id.* at 40–41.

Plaintiffs sought UIM coverage under their Allstate policies.  Comp. ¶ 4.3.  After

Plaintiffs made claims, Allstate sent each of them the following letter:

> Our preliminary determination is that your claim for property
> damage to your vehicle may be covered under the Uninsured/Underinsured
> Motorist property damage coverage of your auto policy.  If that coverage is
> available and you elect to apply it to your claim, you may be eligible for
> diminished value as allowed under the policy.
> Diminished value may apply if the value of your vehicle after
> complete and proper repair is less than the value of your vehicle before the
> damage.  After repairs to your vehicle are complete, if you believe you may

be entitled to recover for diminished value, you will need to establish the existence and amount of your claim for diminished value and submit supporting document to Allstate Fire and Casualty Insurance Company.

If you wish to discuss this matter, please call . . . the number below, and refer to our claim number.

Cummings Dec., Exs. A, B.

Plaintiffs allege Allstate failed to compensate them for the diminished value of their cars. Comp. ¶¶ 1.7, 4.3.

### III. DISCUSSION

**A.    Motion to Strike**

Plaintiffs filed a surreply, arguing Allstate's reply contains new arguments. Dkt. 35. Plaintiffs move to strike the following arguments: (1) the Allstate policy required proof of diminished value; and (2) the *Laughlin* settlement created binding precedent. *Id.* at 3.

With regard to the first argument, Allstate included this argument in its motion to dismiss. Specifically, Allstate cited to the Proof of Claim clause in the Allstate policy and argued:

Plaintiffs do not allege they have complied with the above provision[]. They do not allege, because they cannot, that they . . . provided proof of [diminished value] damages. . . . Plaintiffs failed to do so even though, as noted, Defendant sent Plaintiffs the letters, in full compliance with the *Laughlin* settlement, advising Plaintiffs of the potential for diminished value damages and the requirement that Plaintiffs support any such claim for diminished value damages by supporting documentation to Defendant. . . . Plaintiffs' failure to comply with the proof of loss . . . provision[] of their policies has resulted in actual prejudice to Defendant, and is fatal to all Plaintiffs' claims.

Dkt. 27 at 17.  As for the second argument, the Court does not accept Allstate's position, as explained more fully below.  For these reasons, the Court denies Plaintiffs' motion to strike.

**B.     Motion to Dismiss**

Allstate moves to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6), arguing Plaintiffs have failed to state a breach of contract claim. Dkt. 27 at 7.

**1.     Rule 12(b)(6) Standard**

Motions to dismiss brought under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983).  To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Twombly*, 127 S. Ct. at 1965.  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

**2.     Breach of Contract Claim**

Plaintiffs claim Allstate breached the insurance policy by failing to compensate them for diminished value.  Comp. ¶¶ 4.3, 6.1–6.5.  To state a claim for breach of contract, Plaintiffs must allege (1) the contract imposes a duty, (2) the duty was breached,

1   and (3) the breach proximately caused damages.  *Nw. Indep. Forest Mfrs. v. Dep't of*

2   *Labor & Indus.*, 78 Wn. App. 707, 712 (1995).

3         Plaintiffs' complaint contains sufficient allegations to state a claim for relief.

4   With regard to duty, Plaintiffs allege their Allstate policies "offered to pay for legally

5   recoverable losses and damage to insured vehicles under the UIM Coverage" and

6   "diminished value is not excluded from the UIM portion of Allstate's policy."  Comp.

7   ¶¶ 1.2, 1.6.  As for the remaining elements, Plaintiffs allege their cars suffered diminished

8   value, they filed UIM claims with Allstate, and "Allstate denied Plaintiffs' coverage for

9   diminution in value."  *Id.* ¶¶ 1.8–1.11, 4.3, 5.5.

10        Allstate nevertheless argues Plaintiffs' breach of contract claim is deficient

11  because they fail to allege any facts demonstrating the diminished value their vehicles

12  sustained, what amount was paid for that damage, or why those amounts were not

13  enough.  Dkt. 27 at 8.  This argument is unavailing.  Plaintiffs' complaint contains

14  enough factual allegations for the Court to reasonably infer that Plaintiffs' vehicles

15  suffered diminished value and that Allstate didn't provide compensation for diminished

16  value.  *See, e.g.*, Comp. ¶¶ 1.8–1.9, 4.3; *see also Twombly*, 550 U.S. at 556.

17        Because Plaintiffs have stated a plausible breach of contract claim, the Court

18  denies Allstate's motion to dismiss under Rule 12(b)(6).

19  **C.    Motion for Summary Judgment**

20        Allstate makes several arguments that rely on the letters it sent Plaintiffs.  *See* Dkt.

21  27 at 8–20.  The letters, however, are not referenced in nor attached to Plaintiffs'

22  complaint.  *See generally* Comp.  The letters are therefore outside the pleadings and may

1   not be considered on a motion to dismiss.  *See Lee v. City of Los Angeles*, 250 F.3d 668,

2   688 (9th Cir. 2001).

3        Both parties agree that the Court may convert Allstate's motion to one for

4   summary judgment with respect to Allstate's arguments involving the letters.  *See* Dkt.

5   27 at 4 n.2; Dkt. 32 at 17 n.2, 19.  Plaintiffs have also had notice and an opportunity to

6   respond.  *See* Dkt. 32 at 19.  The Court therefore finds it appropriate to convert Allstate's

7   motion to dismiss to one for summary judgment on the issues discussed below.  *See* Fed.

8   R. Civ. P. 12(d).

9        **1.      Summary Judgment Standard**

10       Summary judgment is proper only if the pleadings, the discovery and disclosure

11  materials on file, and any affidavits show that there is no genuine issue as to any material

12  fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

13  The moving party is entitled to judgment as a matter of law when the nonmoving party

14  fails to make a sufficient showing on an essential element of a claim in the case on which

15  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

16  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

17  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

18  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

19  present specific, significant probative evidence, not simply "some metaphysical doubt").

20  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

21  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

22  jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

1    U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

2    626, 630 (9th Cir. 1987).

3          The determination of the existence of a material fact is often a close question.  The

4    Court must consider the substantive evidentiary burden that the nonmoving party must

5    meet at trial—e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

6    U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

7    issues of controversy in favor of the nonmoving party only when the facts specifically

8    attested by that party contradict facts specifically attested by the moving party.  The

9    nonmoving party may not merely state that it will discredit the moving party's evidence

10   at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

11   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

12   nonspecific statements in affidavits are not sufficient, and missing facts will not be

13   presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

14        **2.**    ***Laughlin* Settlement**

15        Allstate first argues that Plaintiffs' suit is barred by the class action settlement in

16   *Laughlin v. Allstate Ins. Co., et al.*, No. 02-2-10380-0 (Wash. Super. Ct.).  Dkt. 27 at 8–9.

17        Prior to this case, Plaintiffs' counsel filed a putative class action against Allstate in

18   *Laughlin*.  *See* Dkt. 28, Declaration of Jodi McDougall ("McDougall Dec."), Ex. A at 26.

19   The parties in *Laughlin* reached a settlement, which they filed with the Washington

20   Superior Court on October 19, 2007.  McDougall Dec., Ex. B at 26.  The *Laughlin* court

21   entered a final order approving the settlement on March 7, 2008.  *Id.* at 32.  The *Laughlin*

22

1   settlement class consists of "each Person who, during the period from August 20, 1996,

2   to October 19, 2007, meets the following criteria . . . ." *Id.* at 27.

3          While Plaintiffs' counsel was involved in *Laughlin*, it is undisputed that Plaintiffs

4   themselves were not parties to the *Laughlin* settlement.  Moreover, the proposed class

5   definition in this case excludes vehicles older than six years at the time of the accident.

6   Comp. ¶ 5.3.  Thus, it appears that the class members in this suit, which was filed in

7   2015, would not fall within the *Laughlin* settlement class, which pertains to the time

8   period between August 1996 and October 2007.

9          Allstate has not pointed to any persuasive authority that the *Laughlin* settlement

10  should bar Plaintiffs' suit.  Allstate relies on two cases to support its argument: *Howard*

11  *v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000), and *St. Paul Fire & Marine*

12  *Insurance Co. v. Herbert Construction, Inc.*, No. C05-388Z, 2007 WL 836700 (W.D.

13  Wash. Mar. 15, 2007).  These cases, however, are readily distinguishable.  In *Howard*,

14  the Ninth Circuit held that a previous class action settlement barred the plaintiffs' claims

15  because the plaintiffs "clearly [fell] within the Settlement Class."  208 F.3d at 747.  As

16  noted above, Plaintiffs do not clearly fall within the *Laughlin* settlement class.

17  Meanwhile, in *Herbert*, a primary insurer entered into a settlement with its insureds, who

18  were defendants in a construction defect suit.  2007 WL 836700, at *1.  A second

19  primary insurer defended the insurers in the construction defect suit, and then brought

20  claims for contribution against the first primary insurer.  *Id.* at *4.  The *Hebert* court

21  determined that the settlement precluded the second primary insurer's claims for

22

1   contribution against the first primary insurer.  *Id.* at *10.  The situation in *Hebert* is

2   simply not the situation here.

3      Although Washington public policy favors settlement, the Court declines to find

4   that the *Laughlin* settlement bars Plaintiffs' suit under these circumstances.

5      **3.      Duty to Cooperate**

6      Allstate also contends that Plaintiffs' breach of contract claim fails because they

7   did not comply with the cooperation clause in their Allstate policies.  Dkt. 27 at 17.

8   According to Allstate, Plaintiffs failed to cooperate by not providing documentation to

9   establish the existence and amount of their claim for diminished value, as requested in the

10   letters Allstate sent to Plaintiffs.  *See* Cummings Dec., Exs. A, B.

11      Under Washington law, "[i]nsureds may forfeit their right to recover under an

12   insurance policy if they fail to abide by provisions in the policy requiring them to

13   cooperate with the insurer's investigation of their claim."  *Tran v. State Farm Fire &*

14   *Cas. Co.*, 136 Wn.2d 214, 224 (1998).  In order to deny coverage based on an insured's

15   failure to cooperate, the insurer must show: (1) the insured failed to substantially comply

16   with the cooperation clause; (2) the requested information was material to the

17   circumstances giving rise to the insurer's liability; and (3) the insurer suffered actual

18   prejudice as a result of the insured's failure to cooperate.  *Staples v. Allstate Ins. Co.*, 176

19   Wn.2d 404, 413–19 (2013).

20      Before turning to the policy language at issue, the Court notes that the

21   interpretation of insurance policies is a question of law in Washington.  *Moeller v.*

22   *Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 271 (2011).  Washington courts construe

1  insurance policies as a whole, giving force and effect to each clause in the policy.  *Am.*

2  *Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874 (1993), *opinion supplemented by* 123 Wn.2d

3  131 (1994).  "If the language in an insurance contract is clear and unambiguous, the court

4  must enforce it as written and may not modify the contract or create ambiguity where

5  none exists."  *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists. Util. Sys.*, 111 Wn.2d 452,

6  456 (1988).  If the policy language is fairly susceptible to two different reasonable

7  interpretations, it is ambiguous, and the Court may attempt to discern the parties' intent

8  by examining extrinsic evidence.  *Id.* at 456–57.  Any undefined terms should be "given

9  their ordinary and common meaning, not their legal, technical meaning."  *Moeller*, 172

10  Wn.2d at 272.

11       In this case, Allstate relies on the following cooperation clause in the UIM

12  coverage section:

13       **Assistance and Cooperation**
              We may require the insured person to take proper action to preserve

14       all rights to recover damages from anyone responsible for the bodily injury
           or property damage.

15  Cummings Dec., Ex. C at 40, 41.

16       Plaintiffs argue this clause does not apply to the instant suit for two reasons.  Dkt.

17  32 at 21.  First, Plaintiffs contend the cooperation clause involves bodily injury rather

18  than property damage.  *Id.*  This argument is completely without merit.  As noted above,

19  the cooperation clause is located within the UIM section, which provides coverage for

20  both bodily injury and property damage.  Cummings Dec., Ex. C at 38.  Moreover, the

21  clause specifically includes property damage:

22

**Assistance and Cooperation**
We may require the insured person to take proper action to preserve all rights to recover damages from anyone responsible for the bodily injury or *property damage*.

*Id.* at 41 (emphasis added).

Next, Plaintiffs argue the cooperation clause only pertains to preserving Allstate's rights against the tortfeasor, which is not at issue in this case. Dkt. 32 at 21. Based on the plain language of the policy, the cooperation clause is limited to "preserv[ing] all rights to recover damages from anyone responsible" for bodily injury or property damage. Cummings Dec., Ex. C at 41. The Allstate letters notified Plaintiffs they needed to provide documentation to "establish the existence and amount of your claim for diminished value." Cummings Dec., Exs. A, B. There is no indication the letters or the request for documentation related to preserving Allstate's rights to recover from a tortfeasor. Allstate has failed to adequately support its contention that the cooperation clause applies under the circumstances in this case. Accordingly, the Court denies Allstate's motion on this issue.

4.      **Proof of Claim**

Allstate next argues that Plaintiffs did not satisfy conditions precedent under the Allstate policies. Dkt. 27 at 17. To support this argument, Allstate relies on the following provisions in the UIM coverage section:

**Proof of Claim; Medical Reports**
As soon as possible, any person making claim must give us written proof of claim. It must include all details we may need to determine the amounts payable.
\*          \*          \*

1    **Action Against Us**
         No one may sue us under this coverage unless there is full
2    compliance with all the policy terms.[2]

3    Cummings Dec., Ex. C at 40–41.  Under the plain language of these provisions, Plaintiffs

4    were required to provide Allstate with proof of their claims before suing Allstate.

5    Allstate argues Plaintiffs failed to submit proof for their claim of diminished value.

6         Washington courts have consistently held that "where proof of loss is required by

7    a policy of insurance, such proof must be furnished by the insured as a condition

8    precedent to an action upon the policy . . . ."  *Buchanan v. Switzerland Gen. Ins. Co.*, 76

9    Wn.2d 100, 106 (1969).  However, "an insurer cannot deprive an insured of the benefit of

10   a purchased coverage absent a showing that the insurer was actually prejudiced by the

11   insured's noncompliance with conditions precedent . . . ."  *Pub. Util. Dist. No. 1 of*

12   *Klickitat Cnty. v. Int'l Ins. Co.*, 124 Wn.2d 789, 803 (1994).  "The burden of showing the

13   actual prejudice is on the insurer, and it is a factual determination."  *Id.* at 804.  Prejudice

14   is seldom established as a matter of law.  *Mutual of Enumclaw Ins. Co. v. USF Ins. Co.*,

15   164 Wn.2d 411, 427 (2008).

16        Allstate has presented evidence showing Plaintiffs failed to comply with the Proof

17   of Claim clause.  Allstate sent letters to Plaintiffs notifying them that they "may be

18   eligible for diminished value as allowed under the policy."  Cummings Dec., Exs. A, B.

19   ───────────────────

20        [2] Allstate also relies on the following sentence in the UIM coverage section: "The right to
     receive any damages and the amount of damages will be decided by agreement between the
     insured person and us."  Cummings Dec., Ex. C at 38.  Based on this sentence, Allstate argues
21   Plaintiffs were required to reach an agreement with Allstate about the amount of their diminished
     value damages before bringing the instant suit.  Dkt. 27 at 17.  This argument is unavailing.  If
22   reaching an agreement with Allstate is a condition precedent to a lawsuit, then there would be no
     need to sue for breach of contract.

1   The letters advised Plaintiffs that they "will need to establish the existence and amount of

2   your claim for diminished value and submit supporting documentation to Allstate." *Id.*  It

3   is undisputed that Plaintiffs neither sought diminished value nor submitted documentation

4   for diminished value.  Instead, Plaintiffs filed the instant suit—represented by counsel

5   who had worked on the *Laughlin* settlement, no less.

6           Plaintiffs argue Allstate sent the letters as a result of the *Laughlin* settlement, but

7   only the Allstate policies, which do not incorporate the *Laughlin* settlement, define

8   Plaintiffs' rights.  Dkt. 32 at 16.  Plaintiffs' argument misses the mark.  The Allstate

9   policies still require Plaintiffs to "give [Allstate] written proof of claim. . . . includ[ing]

10  all the details [Allstate] may need to determine the amounts payable."  Cummings Dec.,

11  Ex. C at 40.  In the letters, Allstate asked Plaintiffs to provide "supporting

12  documentation" to "establish the existence and amount of your claim for diminished

13  value."  Cummings Dec., Exs. A, B.  This request for documentation was consistent with

14  the Proof of Claim clause in the Allstate policy.

15          Plaintiffs also argue Allstate had all the information, including the vehicles

16  themselves, to assess damages.  Dkt. 32 at 22.  To support this argument, Plaintiffs point

17  to an April 2015 email from an Allstate employee to Kogan.  Dkt. 31, Declaration of

18  Stephen Hansen, Ex. A at 43.  The email states: "I just spoke with Montey and we are

19  just going to cover all the damages."  *Id.*  Plaintiffs, however, have failed to support the

20  inference that follows from this statement—"damages" included both property damage

21  and diminished value—with admissible evidence at this time.  Moreover, the entire email

22  string discusses residual damage to the vehicle's lift gate and, without more evidence, no

1  reasonable juror could conclude that the Allstate employee was referring to diminished

2  value damages.

3      Although Allstate has submitted evidence showing Plaintiffs did not comply with

4  the Proof of Claim clause, the current record does not support a finding of actual

5  prejudice.  Actual prejudice requires "affirmative proof of an advantage lost or

6  disadvantage suffered as a result of the breach, which has an identifiable and material

7  detrimental effect on its ability to defend its interests." *Tran*, 136 Wn.2d at 228.  Allstate

8  has failed to show actual prejudice at this time.  The Court therefore denies Allstate's

9  motion on this issue.

10      **5.    Waiver and Estoppel**

11      Finally, Allstate contends that the doctrines of waiver and estoppel bar Plaintiffs'

12  suit.  Dkt. 27 at 18–19.

13      "A waiver is the intentional and voluntary relinquishment of a known right, or

14  such conduct as warrants an inference of the relinquishment of such right." *Dombrosky*

15  *v. Farmers Ins. Co. of Wash.*, 84 Wn. App. 245, 255 (1996).  "[Waiver] may result from

16  an express agreement, or be inferred from circumstances indicating an intent to waive."

17  *Id.*  "The intention to relinquish the right or advantage must be proved, and the burden is

18  on the party claiming waiver." *Id.*

19      With regard to equitable estoppel, Allstate must show "(1) an admission, statement

20  or act inconsistent with a claim afterwards asserted, (2) action by another in reliance upon

21  that act, statement or admission, and (3) injury to the relying party from allowing the first

22

1  party to contradict or repudiate the prior act, statement or admission." *Bd. of Regents of*

2  *Univ. of Wash. v. City of Seattle*, 108 Wn.2d 545, 551 (1987).

3       At this time, there is insufficient evidence in the record to support a finding of

4  either waiver or estoppel.  As an example, Allstate has not pointed to evidence of its

5  reliance nor the harm it suffered as a result of its reliance.  The Court denies Allstate's

6  motion on this issue.

7                                    **IV. ORDER**

8       Therefore, it is hereby **ORDERED** that Plaintiffs' motion to strike (Dkt. 35) is

9  **DENIED**, Allstate's motion to dismiss (Dkt. 27) is **DENIED**, and Allstate's motion for

10  summary judgment (Dkt. 27) is **DENIED**.

11       Dated this 29th day of February, 2016.

12

13  _____

14  BENJAMIN H. SETTLE
    United States District Judge

15

16

17

18

19

20

21

22

ORDER - 16